UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SALLY M.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   No. 1:20-cv-02276-MG-JRS |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Sally M. seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 423(d), 405(g). For the reasons set forth below, this Court **AFFRMS** the ALJ's decision denying Sally M. benefits.

In June 2017, Plaintiff Sally M. applied for DIB from the Social Security Administration ("SSA"), alleging a disability onset date of March 3, 2016. [Filing No. 11-3 at 1.] Her application was initially denied on August 8, 2017, [Filing No. 11-2 at 128-138; Filing No. 11-2 at 155-163], and upon reconsideration on October 6, 2017. [Filing No. 11-2 at 139-150; Filing No. 11-2 at 165-171]. On December 18, 2018, Sally M. appeared for an administrative hearing before

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named Acting Commissioner.

Administrative Law Judge Cindy Martin (the "ALJ"), and the hearing was continued to a supplemental hearing on July 9, 2019. [Filing No. 11-2 at 31-81; Filing No. 11-2 at 82-103.] The ALJ issued a decision on July 29, 2019, concluding that Sally M. was not entitled to receive benefits. [Filing No. 11-2 at 12-26.] The Appeals Council denied review on June 29, 2020. [Filing No. 11-2 at 1-6.] On August 1, 2020, Sally M. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id*. In reviewing the ALJ's decision, the Court must uphold the ALJ's finding of fact if the findings are supported by substantial evidence. *Stephens*, 888 F.3d at 327. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless

'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Sally M. was 48 years old on the date of her alleged onset of disability. [Filing No. 11-2 at 128.] She has completed educational coursework through grade twelve, [Filing No. 11-2 at 128], and previously worked as an assembler and a machine operator prior to her alleged onset date. [Filing No. 11-2 at 24; Filing No. 11-3 at 5-8, 19.] Sally M.'s application alleges that she can no longer work because of multilevel degenerative disc disease, fibermyositis/fibromyalgia syndrome ("FMS"), and systemic lupus erythematosus. *See* 20 C.F.R. § 404.1520(c); SSR 85-28. [Filing No. 11-2 at 17, 109; Filing No. 11-3 at 18.] [3]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Sally M. was not disabled. [Filing No. 11-2 at 28.] Specifically, the ALJ found as follows:

- At Step One, Sally M. had not engaged in substantial gainful activity[4] during the period at issue. [Filing No. 11-2 at 17.]

- At Step Two, the ALJ found that Sally M. had "the following severe impairments: multilevel degenerative disc disease, fibermyositis/fibromyalgia syndrome (FMS), and systemic lupus erythematosus (20 CFR 404.1250(c))." [Filing No. 11-2 at 17.]

- At Step Three, Sally M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 19.]

- After Step Three but before Step Four, Sally M. had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and/or crawl; and frequent reaching, handling, fingering, and/or feeling with the bilateral upper extremities." [Filing No. 11-2 at 20.]

- At Step Four, relying on the testimony of the vocational expert and considering Sally M.'s RFC, the ALJ concluded Sally M. was able to perform her past work as an assembler and as a machine operator. [Filing No. 11-2 at 24.]

- The ALJ then made an alternative finding at Step Five. The ALJ concluded that "[t]hrough the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations." [Filing No. 11-2 at 25.] Acknowledging these additional limitations, and relying on the testimony of the vocational expert, the ALJ identified three jobs that Sally M. could perform: packer (DOT #559.687-074; 118,000 national jobs), a cleaner (DOT #323.687-014; 400,000 national jobs), and a sorter (DOT #222.687-022; 71,000 national jobs). Suh jobs, according to the VE, existed in significant numbers in the national economy. [Filing No. 11-2 at 25.]

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- Accordingly, the ALJ concluded Sally M. was not under a disability, as defined in the SSA from March 3, 2016, the alleged onset date, through June 30, 2019, the date last insured. [Filing No. 11-2 at 25.]

### III.
#### DISCUSSION

**A.     The ALJ erred in not evaluating the entirety of Ms. McDowell's opinion**

Sally M. argues that the ALJ committed reversible error in failing to consider the opinion of physical therapist, Joanne McDowell, who opined in a modified functional capacity examination ("FCE") that Sally M. could only stand for thirty minutes at a time before needing to sit down. [Filing No. 11-2 at 75; Filing No. 11-4 at 122; Filing No. 18 at 14.]

The Commissioner argues that "[b]ecause [Sally M.] applied for disability after March 27, 2017, 20 C.F.R. § 404.1520c applies," and therefore the ALJ is "not required to articulate how [he or she] considered each medical opinion . . . from one medical source individually." [Filing No. 19 at 6-7; *See* 20 C.F.R. § 404.1520c(b)(1).] The Commissioner contends that while Ms. McDowell evaluated Sally M.'s functioning in approximately twenty-eight different areas, the ALJ "was not required to address each opinion separately" and instead the ALJ properly performed a "single analysis" of all medical opinions from a single source as required by 20 C.F.R. § 404.1520c(b)(1). [Filing No. 19 at 7.]

In reply, Sally M. argues that the Commissioner is attempting to ignore administrative rulings that still require that the ALJ's RFC analysis "always consider and address medical source opinions" and that where "the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." [Filing No. 23 at 2; *See* SSR 96-8p.] Sally M. argues that the Commissioner is offering post hoc explanations that are absent from the ALJ's written decision. [Filing No. 23 at 3.]

6

The ALJ is required to evaluate every medical opinion that he or she receives. 20 C.F.R. § 416.927(c). The former "treating source rule" required a treater's medical opinion to be given controlling weight in some circumstances. The old treating source rule was replaced by the new regulation found in 20 C.F.R. § 404.1520c, which specifies that an ALJ is not required to give special weight to the opinions of a disability applicant's treating physician. *See* 20 C.F.R. § 404.1520c. Instead, all medical opinions are to be evaluated on an equal basis for "persuasiveness" through a checklist of factors that 20 C.F.R. § 404.1520c enumerates.

The opinion that Sally M. argues the ALJ did not consider is a check-box evaluation of limitations in which Ms. McDowell assessed that in an eight-hour workday, Sally M. could frequently sit for up to 1 hour and stand frequently for up to 30 minutes across a four-to-six-hour period. [Filing No. 11-4 at 122.] As the Commissioner notes and this Court agrees, it is unclear whether the ALJ considered the persuasiveness of Ms. McDowell's *entire* opinion. [Filing No. 19 at 7.]

The ALJ noted that Dr. Robert Bigler, a pain specialist Sally M. had presented to beginning in 2017, declined to address Sally M.'s RFC, instead referring her to Ms. McDowell who completed a modified FCE form on October 18, 2018. [Filing No. 11-2 at 22; Filing No. 11-4 at 122.] The ALJ noted that "[a]t the physical therapy assessment, the therapist [Ms. McDowell] recommended a conservative course of treatment … while also finding abnormal straight leg raise test (SLR) …." The ALJ stated that she "was not persuaded by this as [Sally M.'s] prior clinical visits, including those from Dr. Bigler, confirmed that her [SLR] results were negative." [Filing No. 11-2 at 22.] The ALJ then evaluated the results of Ms. McDowell's assessment, elaborating that:

> while the therapist administering the [exam] found the claimant capable of lifting greater weight when the weight was at waist level, the undersigned was not persuaded that the claimant could do such lifting on a continuous basis. As such, the undersigned found it appropriate to limit the claimant to the range of light

7

>adopted above in the residual functional capacity. In further support of the light residual functional capacity, the post-FCE records included ongoing allegations of pain, with range of movement limitations secondary to said pain complaints, but the remainder of the claimant's exam was unremarkable.

[Filing No. 11-2 at 22.]

With respect to the RFC determination, the ALJ was persuaded by the RFC opinions of State agency medical consultants, conducted in 2017, which "revealed no new and material evidence that justified further limitation than that assessed at those levels of the hearing process," and assigned Sally M. an RFC allowing for less than full range of light work following a thorough evaluation of the longitudinal record. [Filing No. 11-2 at 23.] The ALJ further noted her reliance on a 2019 medical opinion from Dr. Kushner, who opined that Sally M. did not have physical limitations caused by a medically determinable impairment. [Filing No. 11-2 at 19-20; 39.]

Thus, while the ALJ reviewed of portions of Ms. McDowell's FCE evaluation by comparison to objective medical evidence and other medical opinions, any discussion regarding persuasiveness of the functional limitation for standing s notably absent from the ALJ's opinion. [Filing No. 11-2 at 22-24.]  The ALJ erred by not discussing why she found the standing limitation in Ms. McDowell's FCE to be unpersuasive. *Terry*, 580 F.3d at 475.

In determining that the ALJ erred in omitting a discussion about why Ms. McDowell's standing limitation was apparently not persuasive, the Court turns now to whether this error warrants remand.

### B. The ALJ's error in not evaluating the portion of Ms. McDowell's opinion was harmless

Sally M. suggests that the ALJ's Step Four error was harmful, arguing that had the ALJ adopted Ms. McDowell's opinion, the ALJ would have ruled out her ability to perform her past relevant work and therefore the ALJ would have proceeded to Step Five to determine if Sally M.

could perform work that existed in significant numbers in the national economy. [Filing No. 18 at 16; Filing No. 23 at 2.] Sally M. further contends that had the ALJ adopted the opinion that Sally M. could only stand for thirty minutes at a time, it is not clear the vocational expert's ("VE") testimony was substantiated by "well-accepted methodology". [Filing No. 23 at 5-6.]

The Commissioner responds that the during the VE's testimony, the VE accepted Sally M.'s RFC regarding standing for thirty minutes and still concluded at Step Five that she was not disabled because jobs existed in significant numbers in the national economy that Sally M. could perform. [Filing No. 19 at 15.] The Commissioner argues that the VE provide a sufficient methodology in response to questioning from Sally M.'s counsel—specifically, "the vocational expert testified that she estimated initial job numbers based on the Occupational Statistics of Employment and that she estimated the reduced numbers based on her experience." [Filing No. 19 at 12.]

In reply, Sally M. argues the VE's testimony regarding job placement and experience "does not independently qualify her to speak with authority regarding how many of a particular job exist in the entire United States Economy." [Filing No. 23 at 5.]

ALJs rely on VEs to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).; *see also*, *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020). In the context of evaluating the reliability of a VE's testimony regarding job-number estimates, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018) (internal quotations omitted). "[A] finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Chavez*, 895 F.3d at

968 (citing *Britton* 521 F.3d at 803). While Congress gives the SSA sufficient flexibility in approaching the job-number estimation, any method the agency uses "must be supported with evidence sufficient to provide some modicum of confidence in its reliability." *Id.* at 969.

In this case, the ALJ determined at Step Four that Sally M. could perform past relevant work as an assembler and a machine operator. [Filing No. 11-2 at 23.] The ALJ then made an alternative finding for Step Five by finding that "[t]hrough the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations." [Filing No. 11-2 at 29.]

Following the ALJ's presentation of a hypothetical to the VE, "whether jobs existed in the national economy for an individual with [Sally M.'s] age, education, work experience, and residual functional capacity[,] [t]he VE testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as a packer (DOT #559.687-074; 118,000 national jobs), a cleaner (DOT #323.687-014; 400,000 national jobs), and a sorter (DOT #222.687-022; 71,000 national jobs)." [Filing No. 11-2 at 29; Filing No. 11-2 at 73-74.]

Sally M.'s attorney then posed a separate hypothetical, including a limitation of standing for only thirty minutes at a time, and whether that limitation would influence her ability to perform past relevant work. [Filing No. 11-2 at 75.] The VE replied that the additional limitation would preclude performance of Sally M.'s past relevant work and the DOT cleaner job would be eliminated, but the DOT packer and sorter jobs would still be available but reduced by 50%. [Filing No. 11-2 at 76.] Sally M.'s counsel probed the VE about her basis for calculating the erosion of

job numbers, to which the VE replied, "[m]y professional education, training, and experience." [Filing No. 11-2 at 77.] Sally M.'s counsel then asked the VE if she relied on any publications to calculate the job numbers. The VE responded that the numbers were "provided by Occupational Statistics of Employment," but the reduction was based on her experience. [Filing No. 11-2 at 78.] Sally M. contends that she "cannot surmise how such an answer serves as an 'accepted methodology', let alone a 'thorough' or 'cogent' explanation of one." [Filing No. 18 at 18-19.]

In describing her relevant experience, the VE testified that she had" performed job development services for individuals looking for packer/sorter jobs with a sit/stand option, and have spoken to employers and read job descriptions that do cite that there would be, like, a stool or it's at a bench position whereas the pace is not, for packing and sorting, at a conveyor belt line or an assembly line. So, yes, these do exist." [Filing No. 11-2 at 78.] Additionally, in separately evaluating the VE's testimony, ALJ determined that "[p]ursuant to SSR 00-4p, … the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." [Filing No. 11-2 at 25.] Though Sally M.'s counsel appears to have challenged the VE's testimony regarding methodology, the VE properly relied on her experience and personal knowledge for estimating job numbers for her methodology and her testimony could satisfy the substantial evidence standard. *Biestek*, 139 S. Ct. at 1152-53 (recognizing that vocational experts "may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling'"); *Chavez*, 895 F.3d at 970 ("At or after a hearing the VE could support the approximation by, for example, drawing on knowledge of labor market conditions and occupational trends, gleaned from reviewing relevant data sources or from placing workers in jobs.").

Therefore, the record contains competent evidence from the VE that even with a 30-minute standing limitation, significant jobs existed in the national economy that Sally M. could perform. Thus, the ALJ's error in not articulating why she found Ms. McDowell's standing-limitation opinion unpersuasive is harmless.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Sally M. benefits. Final judgment will issue accordingly.

Date: 12/1/2021

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

Distribution:

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov